14224

PASTIME AMUSEMENT CO. v. SOUTHEASTERN EXPRESS CO.

(186 S. E., 283)

204

Before Gaston, J., Charleston, June, 1935.

*Mr. Nathaniel B. Barnwell,* for appellant,

*Mr. J. C. Long,* for respondent,

February 11, 1936.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This suit by Pastime Amusement Company, as plaintiff, against the defendant, Southeastern Express Company, was commenced in the Court of Common Pleas for Charleston County in November, 1930. The action is to recover the sum of $3,000.00, actual and punitive damages, for the alleged failure to deliver a moving picture film in time to be shown as advertised on Labor Day, 1930, and the two following days, at the Gloria Theater in Charleston. In its answer the defendant interposed a general denial, and further set up the defense that the shipment in question was transported by it in interstate commerce, and that, under the contract of shipment of the said moving picture film, and the acts of Congress, and the rules and regulations of the Interstate Commerce Commission, and the tariff and regulations of the defendant, filed and published, its liability, if any, was limited to the sum of $50.00, by reason of the terms of the

receipt and bill of lading issued by the defendant for the said shipment. The defendant further alleged, in its answer, that all rights and liabilities in connection with the said shipment were governed by the acts of Congress, bill of lading, and the common law as enforced in the Federal Court, and further alleged that no punitive damages were recoverable in the case.

The case was tried in said Court before his Honor, Judge A. L. Gaston, and a jury. After overruling defendant's motions for a nonsuit and for a directed verdict, the trial Judge submitted the case to the jury on the issue of actual damages; punitive damages being eliminated. The jury rendered a verdict for the sum of $1,500.00, and, from the judgment entered thereon, the defendant, pursuant to due notice, appealed to this Court.

The errors imputed to the trial Judge are set forth under twenty-five exceptions, but counsel for the appellant states in his brief presented to this Court that the issues involved may be considered under the following questions:

"1. Is the liability of the defendant to be determined by the Carmack Amendment (U. S. Code, title 49, c. 1, § 20 (11), [49 U. S. C. A. § 20 (11) note] or by the common law?

"2. Was plaintiff's right of action governed by the contract of shipment made by the shipper in Jacksonville, Florida?

"3. Was the amount which plaintiff could recover in this action limited to fifty ($50.00) Dollars?

"4. Was the evidence which was admitted over objection, in support of the allegations claiming special damages competent?

"5. Was there any competent evidence of any notice being given the defendant at the time of the contract of shipment of circumstances from which special damages might reasonably be expected to result?

"6. Should a verdict have been directed in favor of defendant on the claim for special damages?

"7. Was the evidence in support of the claim for anticipated profits speculative, remote and inadmissible?"

For the purpose of showing the nature and extent of the plaintiff's alleged injury, it is well to refer to the complaint.

The plaintiff is a corporation under the laws of South Carolina, and, according to the allegations set forth in the complaint, was, at the times involved, engaged in business in the city of Charleston, this state, conducting and operating theaters, and displaying motion picture films, having been engaged in and conducting said business at said place for many years, including the operation of the Gloria Theater. It is admitted that the defendant, as well as the plaintiff, is a corporation, and the defendant is, and was at the time involved herein, engaged in the business of a common carrier of wares, merchandise, etc., for hire, operating on railroad lines, including lines in the states of Florida, Georgia, South Carolina, and North Carolina, and as such common carrier is charged with the duty of speedy, safe, and sure delivery of goods, etc., intrusted to its care and charge; that the defendant holds itself out to the public for the said purpose. The plaintiff further alleges, in effect, that the defendant charges a higher rate than is charged by the ordinary common carrier, such as freight trains on railroads, and owes to its patrons a higher duty to transport with safety and dispatch any goods intrusted to its care than is expected and required of the ordinary common carrier referred to, and the defendant company "advertises and represents and holds out to the general public that it provides quick, sure, speedy and efficient means of transporting articles from one city or state to another." In this connection we call attention to the following allegations set forth in the plaintiff's complaint:

"That in the past the Plaintiff company has had numerous moving picture films shipped to or sent to it from various points throughout the United States by means or through the Defendant Express Company; that motion picture films

are such articles as are recognized by the defendant comany that speed in transportation is essential, it being known to the defendant company that if the said picture is not delivered thus, the show cannot go on and a loss will naturally follow to the exhibitor of the said pictures; that, on August 29, 1930, there was delivered to the authorized agents of the defendant company in Jacksonville, Florida, certain moving picture films which the defendant agents agreed to transport and deliver to the Gloria Theater in Charleston, South Carolina; that the films were properly addressed to the Gloria Theater, Charleston, South Carolina; that the films delivered to the defendant company's agent, in fact, were prints of the moving picture known as 'Anybody's War,' which picture is considered well known and extensively advertised as one of the most popular pictures of the year 1930; that the said moving picture, 'Anybody's War,' had been advertised by the Plaintiff to be displayed at the Gloria Theater, Charleston's premier and most popular show house, on September 1st, 2nd, and 3rd, 1930; that although the said picture was delivered to the defendant's agent at Jacksonville, Florida, on August 29, 1930, and was accepted by the agent for the defendant company for immediate delivery to the Gloria Theater in Charleston, South Carolina, and should have been and could have been, by the reasonable exercise of diligence, delivered to the Gloria Theater on August 30, 1930, by the proper, efficient, and careful handling of the same by the defendant company, its agents or servants, that the said picture was not even delivered to the plaintiff, the consignee thereof, until September 3rd, too late to make a practical showing of the picture possible, and that the consignee thereof refused to accept the delivery of the said picture; that when the picture had not been delivered on the morning of September 1st, 1930, the plaintiff, through its representative and agent, immediately brought the matter to the attention of the agent of the defendant company at Charleston, South Carolina; that the plaintiff did everything possible to locate the films but to

no avail; that as a result of the delay in delivering the films to the Gloria Theater in Charleston, South Carolina, the Gloria Theater had to remain absolutely closed during the entire holiday of Labor Day, September 1st, and the plaintiff was deprived of the revenue and profits from the display of 'Anybody's War,' one of the year's most popular pictures for September 1st, 2nd, and 3rd; that the plaintiff was caused to lose the money it had expended for advertising the said picture; that the plaintiff was put to great unnecessary trouble and inconvenience, unto the plaintiff's loss in the sum of Three Thousand ($3,000.00) Dollars; that as the plaintiff has been informed and believes the said moving picture 'Anybody's War,' was sent and delivered to Charlotte, North Carolina, by the defendant company, its agents or servants, although the package was plainly marked and addressed to the Gloria Theater, Charleston, South Carolina; that the damage and loss to the plaintiff as above set forth was due to and caused by the negligence, recklessness, carelessness, and wilful and wanton act of the defendant company, its agents or servants.   *   *   *"

Included in the specific acts of negligence charged against the defendant are that the defendant failed to deliver the shipment in question to the consignee at Charleston, S. C., although the defendant knew, or should have known, that the shipment was consigned to Gloria Theater, Charleston, S. C., and in not reading the address thereon correctly; in failing to place the shipment on the proper car on the proper train, so as to have it reach Charleston, S. C., within a reasonable time after receiving the same in its care; in carrying the said shipment to Charlotte, N. C., instead of to Charleston, S. C., as it was addressed; in failing and omitting to send said shipment to Charleston promptly after it was discovered by the defendant, its agents or servants, or should have been discovered by them, that it had been improperly and wrongly carried to Charlotte, N. C., through the negligence, recklessness, and carelessness and willful conduct of the defendant, its agents or servants.

With reference to the facts alleged by the plaintiff, we may state, in this connection, that the testimony introduced was, in our opinion, sufficient to take all material issues of fact to the jury.

As to the defense interposed by the defendant, we deem it unnecessary to make any further reference thereto except to call attention to the statements set·forth at the beginning of this opinion; but in this connection, in order that the defendant's position may be better understood, we quote herewith the following from appellant's brief in the case:

"Plaintiff, Pastime Amusement Company, is a corporation engaged in operating moving picture theatres in Charleston, Paramount Publix Corporation was at the time a distributor of moving picture films having offices in Atlanta, Georgia, Jacksonville, Florida, and Charlotte, North Carolina. Defendant, Southeastern Express Company, is an interstate common carrier by express operating between Jacksonville, Florida, and Charleston, South Carolina, and other points.

"The shipment weighed 75 pounds and was made under a 'released value' contract which provided that under the rate charged

" 'The shipper agrees that the company shall not be liable in any event for more than fifty dollars for any shipment of 100 pounds or less. * * *'

"There is very little dispute as to the facts, the mass of testimony appearing in the transcript being directed mainly to developing the respective contentions of the parties—the defendant maintaining that there was no notice of a special contract and that, admitting negligent delay, recovery was nevertheless limited to $50.00; while the plaintiff undertook to prove special damages without reference to the $50.00 limitation. Much of the cross examination of plaintiff's witnesses was directed to demonstrating the utterly speculative and remote nature of the damages sought while that of defendant's witnesses was directed to emphasizing the

negligence of the defendant. In view of the nature of the issues and of the course of the trial the printing of practically all of the testimony seemed to counsel unavoidable."

Questions 1, 2, and 3, raised by the exceptions, reading as follows, will be considered together:

"1. Is the liability of the defendant to be determined by the Carmack Amendment (U. S. Code, title 49, c. 1, § 20 (11) [49 U. S. C. A. § 20 (11) note] or by the common law?

"2. Was plaintiff's right of action governed by the contract of shipment made by the shipper in Jacksonville, Florida?

"3. Was the amount which plaintiff could recover in this action limited to fifty ($50.00) Dollars?"

It must be kept in mind that this is not an action to recover for the value of the shipment of goods in question, nor for injury to the same, but it is a suit for damages for alleged negligence and grows out of the alleged delay in the shipment and delivery by express of certain moving picture films, which, it is alleged, the defendant agreed to transport and deliver to the Gloria Theater, a theater in Charleston, S. C., owned and operated by the plaintiff therein. In this connection it may, further, be stated that the suit in question is based on alleged negligence under the common law, and is an interstate shipment, and therefore the laws of the United States in regard to the same apply thereto. On the question of the right of the carrier to limit its liability, attention is called to the case of *Union Pacific Railroad Company v. Burke,* 255 U. S., 317; 41 S. Ct., 283, 284; 65 L. Ed., 656, 658, and we quote from the opinion in that case as follows: "This court has consistently held the law to be that it is against public policy to permit a common carrier to limit its common-law liability by contracting for exemption from the consequences of its own negligence or that of its servants, * * * and valuation agreements have been sustained only on principles

of estoppel and in carefully restricted cases where choice of rates was given—where 'the rate was tied to the release.' "

As to appellant's contention that the plaintiff's right of action is governed by the contract of shipment made by the shipper in Jacksonville, Fla., and that the amount which plaintiff can recover in this action is limited to the sum of $50.00, in the first place we call attention to the fact that there is a question, growing out of the testimony, as to what contract was made regarding the limitation alleged by the defendant as to the amount of liability defendant should be held for, if any. Further, as appears from the allegations of the complaint, quoted above, the plaintiff alleged knowledge on the part of the defendant of the plaintiff's said business, and also knowledge by the defendant that the plaintiff would suffer a loss in case the films in question were not delivered promptly and that the defendant is bound thereby, if it had such knowledge. Whether the defendant had such knowledge was a question for the jury; there being sufficient testimony in the record to require the trial Judge to submit that issue to the jury. Further, as the Circuit Judge correctly charged, when a common carrier is charged with violation of a duty required of it by law, or is charged with a failure or dereliction in the performance of a duty which it owes to the public as a common carrier, based upon the negligence charged, a case arises in tort for damages, and in that event may be held in tort to the party thus injured, even though such tort originated in a breach of contract, and in such an action, if the evidence warrants it, damages may be awarded the plaintiff. As held by his Honor, the trial Judge, actions in tort may, and often do, grow out of contractual matters, and legal principles may be applicable to actions both on tort and on contract alike. Under the law and facts of this case, as we view the same, the defendant's liability is not limited to the amount claimed by the defendant, to wit, $50.00, and the

other questions, above stated, must also be answered against appellant's contention. As stated above, there is testimony in the record tending to sustain all material matters of fact alleged by the plaintiff, as set forth in plaintiff's complaint.

The remaining questions, Questions 4, 5, 6 and 7, growing out of the exceptions, according to appellant's contention, reading as follows, will be considered together:

"4. Was the evidence which was admitted over objection, in support of the allegations claiming special damages competent?

"5. Was there any competent evidence of any notice being given the defendant at the time of the contract of shipment of circumstances from which special damages might reasonably be, expected to result?

"6. Should a verdict have been directed in favor of defendant on the claim for special damages?

"7. Was the evidence in support of the claim for anticipated profits speculative, remote and unadmissible?"

There is testimony in the case tending to show that the defendant accepted the goods in question for transportation well knowing that they were to be sent to the plaintiff at his place of business in Charleston, with knowledge that the plaintiff required them at that place for a special business purpose, to wit, for use in conducting the said special moving picture business, that the prompt shipment and delivery of the same was absolutely necessary for the good of plaintiff's said business, and that the failure to transport and deliver the same promptly would result in considerable damage to the plaintiff's said business. There was also testimony tending to show that the picture in question was a picture of considerable interest, had a wide reputation, and that many people in that section where plaintiff's business is located would desire to attend the show of the same and would make an effort to do so; that the day the picture in question was to be shown, Labor Day, was a rest for a large number of the citizens of that city and

that community, and they sought recreation by going to moving picture shows. There was also testimony tending to show that facts were in the knowledge of the defendant, from which it may be inferred that the defendant knew, or had reason to know, that the plaintiff had gone to considerable expense, and that, if such picture had been shown at the place in question, a considerable amount of · revenue would have been realized from the same by the plaintiff. It is true, as charged by the Circuit Judge, the defendant could not be held for "speculative profits, resting on the mere hope of particular future transactions," and a verdict could not be given the plaintiff for such speculative profits, but it was proper for the jury, in ascertaining the amount of damages sustained by the plaintiff, to take into consideration the fair, average, daily earnings in plaintiff's business, and there was some testimony from which the jury might reach a conclusion as to this.

It must be borne in mind that the defendant, as a common carrier and public service corporation, is required by law to accept and transport with reasonable dispatch goods delivered to it upon which its regular charges are paid, and any failure to transport and express with reasonable dispatch goods so delivered to it constitutes, not only a breach of contract, but a violation of public duty. This was made clear by the trial Judge in his charge to the jury.

As to the question of special damages raised by the appellant, we deem it sufficient to state that special damages for losses arising from failure to deliver goods, of course, cannot be recovered unless the defendant had knowledge of the special circumstances existing at the time of the shipment in question and, as charged by the Circuit Judge, agrees to make the shipment pursuant to such knowledge. However, we may state in this connection that the circumstances and the facts of this case, viewed in the light of the law applicable thereto, give rise to inferences

tending to show that the defendant had knowledge of the special circumstances which would cause the plaintiff loss and damage in his said business. In this connection we may further state that there was testimony tending to show that the defendant knew, or had notice when the films in question were received by it, of the nature and character of the plaintiff's said business as well as the extent of the same, and that the failure to deliver the films in question would result in damage to the plaintiff's said business. In our opinion, the trial Judge could not, under the record in the case, direct a verdict for the defendant with reference to special damages, nor with reference to anticipated profits for the claim for anticipated profits was not speculative.

The exceptions are overruled, and it is the judgment of this Court that the judgment of the Circuit Court be, and is hereby, affirmed.

MR. CHIEF JUSTICE STABLER and MR. JUSTICE BONHAM, and MESSRS. ACTING ASSOCIATE JUSTICES M. M. MANN and PHILIP H. STOLL concur.