218 S.C. 155 (1950)
62 S.E.2d 109
MEDDIN ET AL.
v.
SOUTHERN RY.  CAROLINA DIVISION ET AL.
16426
Supreme Court of South Carolina.
November 9, 1950.
*156 *157 Messrs. Barnwell & Whaley, of Charleston, and Frank G. Tompkins, Jr., of Columbia, for Appellant, Southern Railway-Carolina Division.
Mr. Robert McC. Figg, Jr., of Charleston, for Appellant, Dixie Home Stores.
*158 Messrs. Meyer, Goldberg & Hollings, of Charleston, for Respondents.
*159 Messrs. Barnwell & Whaley, of Charleston, and Frank G. Tompkins, Jr., of Columbia, for Appellant, Southern Railway-Carolina Division, in Reply.
Mr. Robert McC. Figg, Jr., of Charleston, for Appellant, Dixie Home Stores, in Reply.
The order of Judge Lide requested to be published follows:
This is an action by the plaintiffs to recover actual and punitive damages in the sum of $30,000.00 from the defendants as joint tort-feasors, and was commenced on or about June 29, 1949. Each of the defendants demurred to the complaint on grounds hereinafter stated, and these demurrers came before me on October 21, 1949, while I was presiding over a special term of the Court of Common Pleas for Charleston County, and after argument of counsel for the respective parties, were taken under advisement. Helpful briefs have also been filed, and the matter has had my careful attention.
The plaintiffs, constituting a partnership, will sometimes be referred to as Meddin Brothers; and the defendant, Southern Railway-Carolina Division, a railroad corporation, will sometimes be referred to as the Railway Company; and the defendant, Dixie Home Stores, a South Carolina corporation, will sometimes be referred to as Dixie Stores.
The complaint is necessarily a very lengthy document, but I shall endeavor to state the gist thereof as briefly as practicable, omitting much detail; factual allegations being of course deemed to be true in the consideration of the demurrers. *160 Dixie Stores was on or shortly prior to July 23, 1946, the owner of a carload shipment of meat and meat food products then en route from Columbus, Indiana, which it had concluded to sell, and which it did sell to the plaintiff, Meddin Brothers. Pursuant to the agreement of sale the shipment was diverted by Dixie Stores, and at Greenville, S.C. on July 23, 1946, was delivered to the Railway Company, the same being in car SLRX 4910, and the shipment was consigned to "Dixie Home Stores, advise Meddin Brothers, Charleston, S.C." The Railway Company accepted the shipment and issued its uniform, straight bill-of-lading for the same, which was signed both by the Railway Company and Dixie Stores. And it is specifically alleged that at the time of the delivery the shipment was "sound, healthful, wholesome and fit for human food."
The shipment was a highly perishable commodity, intended for human consumption, and was accepted at a higher rate and classification than non-perishable goods, indeed it is alleged that such a shipment is more readily perishable than other food products; and hence its delivery to the purchaser in sound condition depends upon its proper refrigeration, in connection with which, certain legal duties devolved upon the shipper as well as upon the carrier.
It appears from the allegations of the complaint that Dixie Stores orally instructed the Railway Company at the time of the delivery of the car that the same should be iced at Greenville, S.C. the initial point of delivery, and re-iced at Columbia, S.C. en route to Charleston, S.C. and that 15% salt should be used. And the bill-of-lading contains the following icing instructions of the shipper: "Iced At Greenville 2:30 P.M. 7/23  3900 Lbs Ice 585 Salt, Reice at Columbia, S.C. using 15% Salt".
It further appears from the allegations of the complaint that the instructions given by the shipper, Dixie Stores, were complied with by the Railway Company, but that such instructions did not conform to the tariff regulations then *161 in effect filed with the Public Service Commission, especially because they did not require the use of crushed ice or a re-icing at Charleston; and moreover, that notwithstanding the failure of the shipper to give the Railway Company adequate instructions, the letter also failed to comply with the tariff regulations, or to exercise due care, in that, it failed to use crushed ice when the car was re-iced at Columbia at about 2:30 A.M., July 25, 1946, and no ice was furnished between that time and the delivery of the shipment to the plaintiffs at Charleston, S.C. on July 27, 1946, at 9:30 A.M., although the car actually arrived in Charleston the day before.
It may also be observed in this connection from the allegations that under the tariff regulations, filed with the Public Service Commission, and then in effect, this particular car, to wit, SLRX 4910, is listed as having a total capacity of 6,000 pounds of crushed ice, and that in the tariff it was stated: "Not for use of chunk ice". The regulations also define the different kinds of ice, including crushed ice, coarse ice and chunk ice. And it is alleged in the complaint that the car in question, SLRX 4910, is of the type referred to in the tariff regulations as a "Brine-Tank Refrigerator Car", "and is designed primarily for the combined use of crushed ice and salt, the circulation being caused by the normal rise of warm air when forced upward by the cold air developed in the brine tanks"; and attention is called to the fact that this shipment was made during the time of the year 1946 when the heat was actually most excessive.
The shipment arrived in Charleston on July 26, 1946, as hereinbefore indicated, but was not delivered to the plaintiffs until the following morning, because Dixie Stores, the shipper, had forwarded to a certain Bank in Charleston a draft on the plaintiffs for the purchase price to which the bill-of-lading was attached, but allegedly had delayed such forwarding, and that hence the same could not be obtained by the plaintiff until July 27, 1946, and the car was not deliverable *162 to the plaintiffs without the surrender of the bill-of-lading.
Upon the delivery of the car to the plaintiffs its contents were found to be very far from sound, healthful, wholesome or fit for human food, but on the contrary, were in a deplorable state of spoilage, and instead of having crushed ice therein, it is alleged that the car had only about three feet of chunk ice in its bunkers, and in effect that the temperature of the car was relatively much too high. Indeed, the shipment was in such a spoiled and seriously deteriorated condition that when it was inspected by a food inspector of the County Health Department much of its contents was condemned; and notwithstanding the diligent efforts of the plaintiffs to minimize the damages by as much salvage as possible, the complaint says in substance the value of the carload was reduced to approximately one-third of its original value.
It is further alleged that Dixie Stores refused to release the plaintiffs from accepting the shipment; and that the Railway Company declined the payment of written claims filed with it by the plaintiffs.
As has hereinbefore been indicated, this is an action in tort against Dixie Home Stores, the shipper, and Southern Railway-Carolina Division, the carrier, to recover damages, actual and punitive, in the sum of $30,000.00 from the defendants as joint tort-feasors; and the specifications of negligence and willfullness, as the proximate cause of plaintiffs' damages, are set forth at great length in the 55th paragraph of the complaint, being 26 in number. Without mentioning the various details, it may in general be said that these specifications include charges of negligence and willfullness on the part of the shipper, Dixie Stores, in its failure to give proper and adequate instructions to the carrier as required by the tariff regulations; and on the part of the Railway Company as a common carrier for its negligence and willfullness in failing to comply with the provisions of the tariff *163 regulations in cases where the shipper fails in its instructions, and expressly in the failure of the carrier to ice the shipment properly by the use of crushed ice and in its failure to ice the shipment at Charleston in any manner whatsoever, although the carrier knew, or should have known in the exercise of due care, of the necessity for these and other precautions to be taken, to the end that the commodity should be delivered, as it was received, in sound condition, fit for human food; and there are specifications relating to the failure of the carrier to inspect the car, which if this had been done, would have revealed its serious condition.
There are also certain specifications of negligence and willfullness as to the failure of Dixie Stores to forward promptly the papers necessary for the delivery of the shipment to the plaintiffs, that is to say, the bill-of-lading which was attached to the draft for the purchase price.
In this connection special attention should be directed to the allegations of the 34th paragraph of the complaint to the effect that under the tariff regulations in force at the time of this shipment the defendant Dixie Stores was bound by certain important requirements, explained in minute detail in Rule No. 405, from which it appears that the kind of ice to be used is evidently a matter of most vital importance. The manifest purpose of these regulations seems to be to impose upon shippers the legal duty to give adequate instructions to facilitate carriers in performing their legal duties to transport shipments of perishable food products safely and properly. Attention may also be directed to the 36th paragraph of the complaint relating to the legal duties of the carrier under the regulations, where the shipper fails in the performance of its duties of giving proper instructions.
Referring first to the demurrer of Dixie Stores, it should be observed that it is therein alleged that the complaint fails to state facts sufficient to constitute a cause of action as to this defendant in three particulars, to wit: (1) That there is no allegation that Dixie Stores owed any duty to the *164 plaintiffs which was breached; (2) that plaintiffs' remedy, if any, as against this defendant is in contract for breach of warranty, and not in tort; and (3) that this defendant is at all events not liable because the alleged delicts of the defendant Southern Railway-Carolina Division constitute an independent and intervening cause of plaintiffs' damage.
With reference to the first particular, it seems sufficient to say that the allegations of the complaint emphasize the legal duties of Dixie Stores with regard to the proper transportation of the shipment, and that the negligent and willful failure to perform such duties, concurrently with certain negligence and willfullness of the Railway Company, proximately resulted in the damage sustained by the plaintiffs.
Referring to the third particular, to the effect that the negligence and willfullness of the Railway Company constituted such an independent intervening cause of plaintiffs' damages as to insulate the negligence and willfullness of Dixie Stores; it seems to me that this conclusion cannot be drawn from the allegations of the complaint, whatever may be developed upon the introduction of the evidence.
Referring now to the remaining one of the particulars, to wit, the second one, that if there is any cause of action against Dixie Stores, the plaintiffs' remedy against this defendant would be one in contract for breach of warranty arising out of the relationship of seller and buyer, and that there was no cause of action in tort; I am of opinion that even if the plaintiffs may have proceeded in contract against each of the defendants separately, this would not preclude them, in the light of the allegations of the complaint, from bringing a joint action in tort; and if they were required to elect, the bringing of such a suit is in itself sufficient election. Pendleton v. Columbia Ry., Gas & Elec. Co., 133 S.C. 326, 131 S.E. 265. But it sometimes happens that a plaintiff recovers against only one of two or more joint tort-feasors sued in the same action. Halsey v. *165 Minnesota-South Carolina Land & Timber Co., 174 S.C. 97, 177 S.E. 29. It is of course elementary that a common carrier may be sued for damage to a shipment either ex contractu or ex delicto. 13 C.J.S., Carriers, § 251, pages 522-523. Pastime Amusement Co. v. Southeastern Express Co., 181 S.C. 203, 186 S.E. 283.
Referring in this connection to the interesting brief of counsel for the defendant Dixie Stores I have carefully read and considered each of the cases he cites, drawing the distinction between actions ex delicto and actions ex contractu, and of course I concur in the general proposition laid down by these cases, to wit, that if the cause of action is predicated on the alleged breach, or even negligent breach, of a contract between the parties, an action in tort will not lie. On the other hand, where the contract creates a certain relationship between the parties, and certain duties arise by operation of law, irrespective of the contract, because of this relationship, then the breach of such duties warrants an action in tort. As was said in one of the cases cited by counsel, to wit, St. Charles Merc. Co. v. Armour & Co., 156 S.C. 397, 153 S.E. 473, 477, "Actions in tort often have their beginning in contractual matters."
The essential distinction is clearly shown in one of the leading cases relied on by counsel, to wit, Atlantic & Pacific R. Co. v. Laird, 164 U.S. 393, 17 S.Ct. 120, 122, 41 L. Ed. 485, wherein the Court quotes with approval a statement to the effect that if "the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of contract, to take due care, and the defendants are negligent, then the action is one of tort".
In the case at bar the complaint clearly alleges the violation of the tariff rules and regulations by Dixie Home Stores as a concurring proximate cause of the plaintiffs' injuries, that is to say, the negligent and willful failure to perform certain legal duties, not arising out of the particular contract between the plaintiffs and this defendant, *166 but arising out of the relationship created by the contract, and applicable to shippers in general. Surely the breach of such duties created in the public interest is tortious.
This brings us down to the consideration of the demurrer interposed by the defendant Southern Railway-Carolina Division upon the ground that no joint cause of action in tort is stated in the complaint, but that several causes of action not arising out of the same transactions have been improperly united, to wit: (1) A cause of action in contract against the defendant Dixie Home Stores for the alleged breach of a contract of sale to which the Railway Company was not a party; (2) a cause of action in tort for actual damages against the Railway Company based upon its alleged negligence in the performance of a contract for carriage as a common carrier, for which its co-defendant is not liable; and (3) a cause of action in tort for punitive damages against the defendant Railway Company upon its alleged willfulness in the performance of a contract for carriage as a common carrier, for which its co-defendant is not liable.
This demurrer in effect admits that a cause of action is stated (strictly speaking, two causes of action, but which may be jumbled under our practice) in tort for damages, both actual and punitive, against the defendant Southern Railway-Carolina Division for its alleged negligence and willfulness relating to its legal duties as a common carrier. But I am not in agreement with the statement in this demurrer that there is a separate cause of action in contract alleged against the defendant Dixie Home Stores; for, as I have already indicated, it is my opinion that the complaint states a single cause of action, and that it is one in tort against both defendants as joint tort-feasors. Hence, an essential question to be determined upon the consideration of both demurrers is whether or not under the allegations of the complaint both the defendants owed to the plaintiffs certain legal duties under the tariff rules and regulations filed with the South Carolina Public Service Commission relating *167 to the proper icing and protection of this refrigerator car, to the end that the shipment of perishable food products therein contained might be delivered in the condition in which it was originally received, to wit, as sound, healthful, wholesome and fit for human food.
In addition to what has already been said with reference to the demurrer of Dixie Stores, no case has been cited by counsel, nor have I found any in my own research, where the facts were very similar to those in the case at bar; but after due consideration of the well-established general principles I am definitely of opinion that where the negligence of a shipper in its violation of the tariff rules and regulations combines and concurs, as a proximate cause of the injury sustained by the owner, with the negligence of a common carrier in the performance of its legal duties relating to the protection and preservation of a carload of perishable food products, each of them is liable in tort, and they may be joined in a suit against them as joint tort-feasors. And of course the same rule would apply to the charge or charges of willfulness.
As I have hereinbefore indicated, it seems to be manifest that the rules and regulations to which reference has been made were promulgated in the furtherance of safe and proper transportation of perishable food products, imposing certain legal duties upon shippers as well as upon carriers. In the well-prepared brief of counsel for the Railway Company reference is made to these "Rules and Regulations of the South Carolina Public Service Commission", and counsel construe the same as "intended to place beyond peradventure on the carrier the obligation to properly ice refrigerator cars containing perishable goods". That the carrier has this obligation is of course not questioned, but I am of opinion, as I have already stated, that these rules and regulations clearly do also impose certain obligations upon the shippers of such goods.
*168 There are also certain authorities from other jurisdictions showing that under some circumstances the shipper may be held liable for his failure to perform certain duties in connection with the matter of shipping the goods. Hence, brief reference will now be made to these cases, although obviously they are not in point in every respect. One of them is the New York Court of Appeals case of Miller v. Harvey, 221 N.Y. 54, 116 N.E. 781, L.R.A. 1917 F, 559, wherein it was held that the loss of goods in transit must fall upon the seller and not on the buyer where the seller in delivering the goods to the carrier contracts for liability of only fifty per cent. of the value, when he might have secured full liability at small additional expense, and the statute provides that the seller must make such contract with the carrier on behalf of the buyer as may be reasonable.
Moreover, there is an interesting annotation to this case, referring to the few reported cases in which such a matter has been considered, and included among these cases is an early English case holding against the shipper, and also a United States Supreme Court case, to wit, Reid v. Fargo, 241 U.S. 544, 36 S.Ct. 712, 60 L.Ed. 1156, wherein it was held that an express company which accepted in London an automobile to be shipped to New York, and having boxed the same shipped it by an ocean carrier without declaring its value, taking from the steamship company a bill-of-lading limiting liability to $100.00 unless a greater value is declared and extra freight paid, was secondarily liable to the owner, where the car was seriously damaged through the negligence of stevedores employed by the steamship company to discharge the cargo, even though the express company be regarded as the mere forwarding agent.
It is, therefore,
Ordered, that the demurrers of both of the defendants to the complaint herein be, and they are hereby, overruled; and that each of the defendants shall have, and the same is hereby granted to it, the right to answer the complaint herein *169 at any time within twenty (20) days after written notice of the filing of this order.
November 9, 1950.
Per Curiam.
We are satisfied with the order of Judge Lide overruling the demurrers of the respective defendants-appellants, and direct that his order be published as the opinion of this Court.